T.C. Memo. 2006-190


UNITED STATES TAX COURT


JERRY AND PATRICIA A. DIXON, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

---

[1]This Memorandum Opinion supplements Dixon v. Commissioner, T.C. Memo. 2006-90.  Cases of the following petitioners have been treated as  related to the above-captioned case for purposes of giving effect to the mandates of the Court of Appeals for the Ninth Circuit in Dixon v. Commissioner, 316 F.3d 1041, 1047 (9th Cir. 2003), as amended Mar. 18, 2003 (Dixon V), revg. and remanding T.C. Memo. 1999-101 (Dixon III):  Robert H. and Barbara A. Gridley, docket Nos. 10588-83, 10931-84, 38757-84; Norman W. and Barbara L. Adair, docket Nos. 17642-83, 38965-84, 35608-86, 479-89, 8070-90; Ronald L. and Mattie L. Alverson, docket No. 17646-83; Russell L. Fleer, Sr., and Sally A. Fleer, docket Nos. 27053-83 and 13477-87; Hoyt W. and Barbara D. Young, docket Nos. 4201-84, 22783-85, 30010-85; Robert L. and Carolyn S. DuFresne, docket Nos. 15907-84, 30979-85; John L. and Terry E. Huber, docket No. 20119-84; Arden L. and Barbara G. Blaylock, docket No. 28723-84; Terry D. and Gloria K. Owens, docket No. 40159-84; Richard and Fiorella Hongsermeier, docket No. 29643-86; Willis F. McComas II and Marie D. McComas, docket No. 19464-92; Wesley Armand and Sherry Lynn Cacia Baughman, docket No. 621-94; Joe A. and JoAnne Rinaldi, docket No. 7205-94; Norman A. and Irene Cerasoli, docket No. 9532-94; Stanley C. and Sharon A. Titcomb, docket No. 17992-95; Richard B. and Donna G. Rogers, docket No. 17993-95.  The 27 related cases have been consolidated for briefing and opinion.

Docket Nos. 9382-83, 10588-83,   Filed September 7, 2006.
        17642-83, 17646-83,
        27053-83, 4201-84,
        10931-84, 15907-84,
        20119-84, 28723-84,
        38757-84, 38965-84,
        40159-84, 22783-85,
        30010-85, 30979-85,
        29643-86, 35608-86,
        13477-87, 479-89,
        8070-90, 19464-92,
        621-94, 7205-94,
        9532-94, 17992-95,
        17993-95.

John A. Irvine and Henry G. Binder, for petitioners in docket Nos. 9382-83, 15907-84, and 30979-85.

Joe Alfred Izen, Jr., for petitioners in docket Nos. 17642-83, 4201-84, 38965-84, 40159-84, 22783-85, 30010-85, 35608-86, 479-89, and 8070-90.

Robert Alan Jones, for petitioners in docket Nos. 17646-83, 10931-84, 38757-84, 19464-92, 621-94, and 9532-94.

Declan J. O'Donnell, for petitioners in docket Nos. 10588-83, 27053-83, 28723-84, and 13477-87.

Michael Louis Minns and Enid M. Williams, for petitioners in docket No. 29643-86.

Joe A. and JoAnne Rinaldi, pro sese in docket No. 7205-94.

Robert Patrick Sticht, for petitioners in docket Nos. 20119-84, 17992-95, and 17993-95.

Henry E. O'Neill and Peter R. Hochman, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  These cases continue before the Court on petitioners Richard and Fiorella Hongsermeier's motion under Rule 161[2] for reconsideration of our Memorandum Opinion in T.C. Memo. 2006-90 (Dixon VI).  Petitioners' motion arises from litigation using a test case procedure that resulted in <u>Dixon v. Commissioner</u>, T.C. Memo. 1991-614 (Dixon II), vacated and remanded sub nom. <u>DuFresne v. Commissioner</u>, 26 F.3d 105 (9th Cir. 1994), on remand <u>Dixon v. Commissioner</u>, T.C. Memo. 1999-101 (Dixon III), supplemented by T.C. Memo. 2000-116 (Dixon IV), revd. and remanded 316 F.3d 1041 (9th Cir. 2003) (Dixon V).  On the ensuing remand, Dixon VI responded to the Dixon V primary mandate with regard to the sanction imposed against respondent; and  <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 (Dixon VII), and <u>Young v. Commissioner</u>, T.C. Memo. 2006-189, responded to the Dixon V ancillary mandate with regard to petitioners' appellate attorney's fees and costs incurred in Dixon V.

In Dixon V, as a sanction against respondent for the fraud on the court perpetrated by respondent's attorneys in the trial of the test cases that had resulted in the decisions in favor of respondent against the test case petitioners in Dixon II, the

_____

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986.

Court of Appeals mandated that "terms equivalent to those provided in the settlement agreement" between the IRS and test case petitioners John R. and Maydee Thompson (the Thompsons) be extended to test case petitioners and all other taxpayers properly before that court. Dixon v. Commissioner, 316 F.3d at 1047. It left to this Court's "discretion the fashioning of such judgments which, to the extent possible and practicable, should put these taxpayers in the same position as provided for in the Thompson settlement." Id. n.11.

Petitioners primarily ground their motion for reconsideration of Dixon VI, regarding the sanction to be imposed on respondent, on allegations that respondent engaged in attempts at a continued coverup of the fraud of respondent's attorneys and that this Court did not properly address that alleged continued misconduct in Dixon VI.[3] Petitioners ask the Court to reopen the record in Dixon VI and impose additional sanctions on respondent for respondent's alleged continued misconduct. Because the Court

---

[3]Petitioners in their motion also ask us to change two holdings of our Dixon VI opinion, our handling of the Thompsons' sec. 6651(a) late-filing addition, and the cutoff date of deficiency interest accruals against Kersting project petitioners, described infra in text following note 9 as items (3) and (4). Petitioners made their arguments on these issues in their opening brief, and Dixon VI adequately addresses them. Consequently, we decline to change our handling of the 1981 late-filing addition or the cutoff date on the deficiency interest accruals. See Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).

is considering similar allegations by other taxpayers in motions for leave to file motions to vacate stipulated decisions that were never appealed and have become final, we granted petitioners' motion for reconsideration and ordered and received respondent's response to petitioners' motion. However, we conclude in this Supplemental Memorandum Opinion that the law of the case and the primary mandate of the Court of Appeals in Dixon V preclude us in the cases at hand from conducting any further inquiry into respondent's misconduct and from imposing any additional sanction on respondent with respect to cases of taxpayers, including petitioners, who were properly before that court.[4]

## Background

For purposes of this motion, we incorporate our findings in Dixon III and IV, as modified by Dixon V and VI. We begin by setting forth the background pertinent to this Supplemental Memorandum Opinion.

Respondent determined deficiencies and additions to tax against petitioners and other taxpayers who participated in tax

---

[4]We note that the law of the case and the mandates of the Court of Appeals for the Ninth Circuit in Dixon V do not preclude this Court from making such an inquiry in addressing motions for leave to file motions to vacate stipulated decisions filed by taxpayers who were not properly before the Court of Appeals. See, e.g., motions for leave filed by Jesse M. and Lura L. Lewis in docket Nos. 15673-87, 18551-88, 29429-88, regarding Lewis v. Commissioner, T.C. Memo. 2005-205 (motion for reconsideration pending).

shelter programs (the Kersting project) promoted by Henry F.K. Kersting (Kersting). Respondent's determinations resulted in the commencement in this Court of more than 1,800 cases arising from the disallowance of deductions claimed by participants in the Kersting programs. Most such participants who filed petitions in this Court signed "piggyback agreements" with respondent, agreeing to be bound by the outcome of test cases that had been selected by respondent's trial attorney and Brian Seery (Seery), the attorney originally retained by Kersting to provide representation in the Tax Court to participants in his programs.

Following Seery's withdrawal, Kersting engaged Robert J. Chicoine (Chicoine) and Darrell D. Hallett (Hallett) to represent the participants in his programs in the Tax Court. Some such participants, including the Thompsons (who were test case petitioners), separately retained Luis C. DeCastro (DeCastro) to represent them in the Tax Court.

DeCastro obtained 20-percent reduction settlements on behalf of some of the Kersting project participants he represented, as did Chicoine and Hallett on behalf of other nontest case petitioners. Chicoine and Hallett disclosed the 20-percent reduction settlement to the test case and nontest case petitioners who had inquired about the possibility of a more advantageous settlement than the 7-percent reduction project settlement respondent had been offering.

Chicoine and Hallett's settlement efforts displeased Kersting. Kersting fired Chicoine and Hallett and retained Joe Alfred Izen, Jr. (Izen), to try the Kersting project test cases on behalf of the petitioners.

Before the trial of the Kersting project test cases, DeCastro, on behalf of the Thompsons, and respondent's trial attorney, Kenneth W. McWade (McWade), with his immediate supervisor, William A. Sims (Sims), agreed to a secret settlement they did not disclose to respondent's management, the attorneys or other test case petitioners, or the Tax Court. The purpose and effect of this settlement was to provide refunds to the Thompsons that were used to pay DeCastro's attorney's fees to represent the Thompsons in the test case trial as consideration for the Thompsons' staying in the test case array and Mr. Thompson's testifying at the test case trial.

McWade also entered into a secret pretrial settlement with pro se test case petitioners John R. and E. Maria Cravens (the Cravenses) that was much less advantageous to them than the Thompson settlement was to the Thompsons or the 20-percent reductions obtained by DeCastro and by Chicoine and Hallett was to other Kersting program participants. The Cravens settlement was on the order of but slightly less advantageous to the

Cravenses than respondent's 7-percent reduction project settlement offer, which had been available to Kersting project participants during 1982 through 1988.

In Dixon II, the Court sustained almost all of respondent's deficiency determinations in the test cases. After the Court entered decisions for respondent in the test cases in accordance with Dixon II, respondent's management discovered the Thompson and Cravens settlements and disclosed them to the Court. On June 9, 1992, respondent filed motions for leave to file motions to vacate the decisions entered against the Thompsons, the Cravenses, and another test case petitioner, Ralph J. Rina (Rina). Respondent asked the Court to conduct an evidentiary hearing to determine whether the undisclosed agreements with the Thompsons and the Cravenses had affected the trial of the test cases or the opinion of the Court. In the meantime (on May 14, 1992), the other test case petitioners, who continued to be represented by Izen, had appealed the Court's decisions against them.

On June 22, 1992, the Court granted respondent's motions to vacate the decisions filed in the Thompson and Cravens cases and denied respondent's request for an evidentiary hearing. By order dated June 22, 1992, the Court also denied respondent's motion to vacate the decision against Rina, on the ground that the testimony, stipulated facts, and exhibits relating to the

Thompson and Cravens cases had no material effect on the Court's Dixon II opinion as it related to Rina.

On July 22, 1992, Izen filed a motion for reconsideration of the Court's order denying respondent's motion to vacate the decision in the Rina case. By order dated August 4, 1992, the Court denied Izen's motion for reconsideration.[5]

On July 16, 1992, DeCastro had filed a motion for entry of decision in favor of the Thompsons in accordance with the terms of their settlement with respondent. Respondent's motion for entry of decision and supporting memorandum in opposition to DeCastro's motion for entry of decision disclosed to the Court the facts that had been uncovered in respondent's investigation. These included the fact that the purpose and effect of the Thompson settlement was to provide refunds to the Thompsons that were used to pay DeCastro's attorney's fees to represent the Thompsons as consideration for staying in the test case array and Mr. Thompson's testifying at the test case trial. The Court entered decisions in favor of the Thompsons and the Cravenses in accordance with their settlements but allowed the adverse decisions against other test case petitioners to stand.

Thereafter, Izen and Robert Patrick Sticht (Sticht), on

_____

[5]Rina appealed this denial. Unlike the Thompsons and the Cravenses, Rina had no settlement agreement with respondent's trial attorney. On June 13, 1995, Rina agreed to the entry of a stipulated decision in the amounts originally determined in his statutory notice of deficiency.

behalf of various nontest case petitioners, filed separate
motions with the Court to intervene in the Thompson and Cravens
cases.  The Court denied these motions to intervene.[6]

In January 1993, after respondent's management had
discovered the Thompson settlement and disclosed it to the Court
and while the other test cases were on appeal, respondent made a
project settlement offer to nontest case petitioners.  This
offer, which in effect reinstated respondent's earlier project
settlement offer to reduce Kersting deficiencies by 7 percent,
was substantially less advantageous to petitioners than the
Thompson settlement.  More than 400 nontest case petitioners
accepted respondent's reinstated project settlement offer.[7]

---

[6]Neither the Thompsons nor the Cravenses appealed the
decisions giving effect to their settlements.  Izen and Sticht
separately appealed the orders denying their motions to intervene
in the Thompson and Cravens cases on behalf of the nontest case
petitioners in various courts, including the Courts of Appeals
for the Second, Ninth, and Tenth Circuits.  All appeals in the
Thompson and Cravens cases eventually were dismissed.  In an
unpublished opinion filed June 15, 1994, the Court of Appeals for
the Ninth Circuit stated:

> The Tax Court's August 25 and 26, 1992 decisions
> entering settlement in the Cravens and Thompson cases,
> respectively, are final.  26 U.S.C. § 7481(a)(1); Fed.
> R. App. P. 13.  The Tax Court lacks jurisdiction to
> vacate those decisions.  Billingsley v. CIR, 868 F.2d
> 1081, 1084 (9th Cir. 1989).  Because there is no case
> remaining in which the taxpayers can intervene, this
> appeal is moot. [Adair v. Commissioner, 26 F.3d 129
> (9th Cir. 1994).]

[7]There were approximately 100 cases that had settled before
the discovery and disclosure of the misconduct of respondent's
(continued...)

On appeal, the test case petitioners represented by Izen argued that the trial of the test cases had been tainted by the Thompson and Cravens settlements.  The Court of Appeals for the Ninth Circuit agreed, vacating the decisions in the remaining test cases and remanding them to this Court with directions "to conduct an evidentiary hearing to determine the full extent of the admitted wrong done by the government trial lawyers." DuFresne v. Commissioner, 26 F.3d at 107.  The Court of Appeals, citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991), directed the Court to consider "whether the extent of misconduct rises to the level of a structural defect voiding the judgment as fundamentally unfair, or whether, despite the government's misconduct, the judgment can be upheld as harmless error."  Id. Further, the Court of Appeals directed this Court to consider on the merits all motions of intervention filed by affected parties. See id.

For purposes of the evidentiary hearing mandated by the Court of Appeals in DuFresne, and to give effect to the direction of the Court of Appeals regarding intervention, this Court ordered that the cases of 10 nontest case petitioners, one docket

---

[7](...continued)
attorneys, encompassing both the original project settlement offer (7-percent reductions) and other settlements obtained by DeCastro and by Chicoine and Hallett (on the order of 20-percent reductions).

represented by Izen, some represented by Sticht, and others by Robert Alan Jones (Jones), be consolidated with the remaining test cases.[8]

During the course of the evidentiary hearing mandated by the Court of Appeals in DuFresne, Izen sought discovery of documents regarding respondent's conduct following the trial of the test cases. Izen alleged, inter alia, that respondent's activities after May 1992 amounted to an effort to cover up the fraudulent conduct of the Government attorneys in the test cases. The Court denied Izen's discovery requests. See Dixon III, sec. III C.

In Dixon III, this Court held that the misconduct of McWade and Sims in arranging and failing to disclose the Thompson settlement did not create a structural defect but instead resulted in harmless error. In Dixon III, the Court nevertheless imposed sanctions against respondent, holding that Kersting program participants who had not had final decisions entered in their cases would be relieved of liability for the interest component of the addition to tax for negligence under section

---

[8]The nontest cases that were consolidated with the remaining test cases for purposes of the evidentiary hearing initially included petitioners represented by Declan J. O'Donnell. Those petitioners, however, dropped out and did not participate in the evidentiary hearing, choosing instead to file a motion for summary judgment to obtain the benefit of the Thompson settlement. The Court denied the motion in Gridley v. Commissioner, T.C. Memo. 1997-210.

6653(a)(1)(B), and incremental interest attributable to the increased rate prescribed in section 6621(c).  In Dixon IV, the Court awarded additional sanctions against respondent by awarding petitioners attorney's fees and costs under section 6673(a)(2) but declined to impose any further sanctions.

Test case and nontest case petitioners appealed.  Izen, in his brief to the Court of Appeals, argued not only that the misconduct of respondent's attorneys was a fraud on the court, but also that the Tax Court had abused its discretion by denying petitioners' discovery requests related to allegations of respondent's continued misconduct after the trial of the test cases.  Although the Court of Appeals did not address Izen's discovery arguments in its opinion, it commented that respondent's disclosure of respondent's attorneys' misconduct "was anything but complete".  Dixon v. Commissioner, 316 F.3d at 1045 n.8.

In Dixon V, the Court of Appeals concluded that "the misconduct, including its persistence and concealment, did indeed amount to a fraud on the court."  Id. at 1043.  As a sanction against respondent for the misconduct, the Court of Appeals mandated that "terms equivalent to those provided in the settlement agreement with [the Thompsons] and the IRS" be extended to "Appellants [test case petitioners] and all other taxpayers properly before this Court".  Id. at 1047.  Notably,

the Court of Appeals did not find that this Court's evidentiary hearing or findings of fact on the misconduct of respondent's attorneys were inadequate or did not otherwise comply with its mandate in DuFresne. Nor did the Court of Appeals address much less find error in this Court's denial of Izen's discovery requests or order us to conduct an evidentiary hearing regarding the continued misconduct alleged by Izen.

During the proceedings on remand from the Court of Appeals opinion in Dixon V, this Court, in an order issued October 12, 2004, allowed petitioners' renewed discovery requests (that the Court had originally denied in the proceedings on remand from DuFresne) for the limited purpose of ascertaining respondent's understanding of the origins and nature of the Thompson settlement. With one exception,[9] the Court ordered the

---

[9]This Court sustained respondent's invocation of the deliberative process privilege to deny petitioners access to the material described in item 123 of respondent's privilege log, because the material was not probative of respondent's understanding of the origins and nature of the Thompson settlement. Item 123 consisted of a chronological file of 16 volumes comprising more than 1,200 items and 5,000 pages created and maintained by respondent's counsel Henry E. O'Neill (O'Neill). However, in note 2 of the Oct. 12, 2004, order, the Court anticipated and cautioned that the documents and materials in item 123 might be required to be produced at some later time in connection with pending and proposed motions for leave to file motions to vacate decisions in cases in which stipulated decisions have been entered that may raise questions regarding the adequacy of respondent's disclosure of the misconduct of McWade and Sims and the procedural status of the test cases. That subject will be addressed in pending proceedings on the motions for leave to file motions to vacate stipulated decisions
(continued...)

production of the more than 200 documents and items encompassed by respondent's privilege log, as being relevant to that purpose.

In Dixon VI, we held that: (1) The final Thompson settlement is to be regarded as resulting in a 63.37-percent reduction of the Thompsons' deficiencies, as well as elimination of all Kersting-related penalties and additions; (2) the Thompson settlement encompasses and requires the vacating of the portion or portions of the deficiencies determined against any petitioners that may be attributable to the "Bauspar" shelter that was also promoted by Kersting; (3) the Thompson settlement's cancellation of the Thompsons' 1981 late-filing addition justifies cancellation of not only all non-Kersting-related penalties and additions but also all other substantive adjustments not arising from shelters promoted by Kersting; (4) interest on the reduced deficiencies shall not be charged beyond the date in June 1992 fixed by respondent's concession and shall not be stopped as of any earlier date, such as December 1986, which petitioners contend marked the inception of the fraud on the court.

---

[9](...continued)
entered in response to respondent's project settlement offer of January 1993 and other settlements of Kersting project cases. See supra note 4.

Discussion

In their motion for reconsideration, petitioners ask the Court to investigate and impose sanctions on respondent for alleged misconduct that occurred after the trial of the test cases.

Petitioners argue that there is substantial newly discovered evidence that respondent's management made misrepresentations to cover up the extent of the fraud of respondent's trial attorneys and to distort the facts in pleadings filed with this Court in order to reduce the Government's monetary exposure and contain respondent's public embarrassment and accountability. Petitioners ask the Court to conduct a further inquiry into respondent's alleged coverup misconduct and to impose additional sanctions on respondent for that misconduct.

Respondent counters that, upon receiving the mandate of an appellate court, the lower court cannot vary it or examine it for any purpose other than execution, and that the Tax Court has fully complied in Dixon VI with the mandate of the Court of Appeals in Dixon V.  We agree with respondent.

The Courts of Appeals have exclusive jurisdiction to review the decisions of the Tax Court in the same manner and to the same extent as decisions of the District Courts in civil actions tried without a jury.  Sec. 7482(a)(1).  Upon such review, the Courts of Appeals "have power to affirm or, if the decision of the Tax

Court is not in accordance with law, to modify or to reverse the decision of the Tax Court, with or without remanding the case for a rehearing, as justice may require." Sec. 7482(c)(1).

Generally, perfection of an appeal of a decision or certification transfers jurisdiction of the case to the Court of Appeals; i.e., the jurisdiction of the trial court ceases and that of the Court of Appeals begins. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). Once an appeal is commenced, the trial court generally does not have authority to act upon matters relating to the subject matter of the appeal until the mandate from the appellate court is returned.[10] Hunter Douglas Corp. v. Lando Prods., Inc., 235 F.2d 631, 632-633 (9th Cir. 1956); Pollei v. Commissioner, 94 T.C. 595, 600 (1990). Once an appellate court returns its mandate, jurisdiction over the case revests in the trial court. United States v. Cote, 51 F.3d 178, 182 (9th Cir. 1995). Under the law of the case doctrine and the rule of mandate, the trial court's authority to address any issues after an appeal is completed is generally

---

[10]There are limited exceptions to this general rule. Even though an appeal of a judgment is pending in the Court of Appeals, "the lower court may retain jurisdiction over certain matters, without appellate court approval or sanction," e.g., matters that are "collateral to the appeal, in aid of the appeal, to correct clerical mistakes, in aid of execution of a judgment that has not been superseded, and to maintain the status quo between the parties pending the appeal." Pollei v. Commissioner, 94 T.C. 595, 600 (1990).

limited by any action taken by the appellate court with respect to those issues during the appeal.

> On remand, a trial court may not deviate from the mandate of an appellate court * * * "[w]hen a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."  Firth v. United States, 554 F.2d 990, 993 (9th Cir. 1977) * * * The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded."  In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895).  [Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp), 752 F.2d 1334, 1337 (9th Cir. 1984); alteration in the original.]

The "law of the case" doctrine requires a decision on a legal issue by an appellate court to be followed in all subsequent proceedings in the same case.  Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993).  The doctrine generally precludes reexamination of issues decided either expressly or by necessary implication by the appellate court upon appeal and applies to the trial court on remand and even to the appellate court itself upon a subsequent appeal.  Pollei v. Commissioner, supra at 601.  The law of the case acts as a bar only when the issue in question was actually considered and decided by the first court and does not extend to issues an appellate court did not address.  United States v. Cote, supra at 181-182.

Upon remand of the case, a corollary of the law of the case doctrine, known as the rule of mandate, requires the lower court to implement both the letter and the spirit of the appellate court's mandate. The rule of mandate is similar to, but broader than, the law of the case doctrine and prohibits the lower court from disregarding the appellate court's explicit directives. Herrington v. County of Sonoma, supra at 904. The lower court, upon receiving the mandate of an appellate court "cannot vary it or examine it for any other purpose than execution". In re Sanford Fork & Tool Co., supra at 255. The appellate court's mandate controls all matters within its scope, and the trial court cannot give relief beyond the scope of the mandate. Newball v. Offshore Logistics Intl., 803 F.2d 821, 826 (5th Cir. 1986). Thus, a lower court cannot revisit its already final determinations unless the mandate allows it. United States v. Lewis, 862 F.2d 748, 750 (9th Cir. 1988).

While a mandate controls all matters within its scope, on remand a lower court is free to consider any issue not foreclosed by the mandate. United States v. Kellington, 217 F.3d 1084 (9th Cir. 2000). Under certain circumstances, the lower court may issue an order on remand that deviates from the mandate provided "it is not counter to the spirit of the * * * [appellate] court's decision". Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1404 (9th Cir. 1993).

In Dixon V, the Court of Appeals considered the misconduct of respondent's attorneys in the test cases, determined that the misconduct constituted fraud on the court, and formulated the appropriate sanction. The Court of Appeals then mandated that this Court enter decisions in these cases on "terms equivalent to those provided in the settlement agreement with [the Thompsons] and the IRS". Dixon v. Commissioner, 316 F.3d at 1047. We must therefore consider whether the issue of respondent's alleged continued misconduct following the trial of the test cases was addressed and disposed of in a prior proceeding so that the Dixon V mandates foreclosed further inquiry into that subject. See Sprague v. Ticonic Natl. Bank, 307 U.S. 161, 164 (1939).

In DuFresne v. Commissioner, 26 F.3d at 107, the Court of Appeals required the Tax Court to "conduct an evidentiary hearing to determine the full extent of the admitted wrong done by the government trial lawyers." During the course of the evidentiary hearing required by the Court of Appeals in DuFresne, Izen sought discovery of documents regarding respondent's conduct following the trial of the test cases, alleging that respondent attempted to "cover up" the fraudulent conduct of the Government attorneys in the test cases. Following the evidentiary hearing mandated by DuFresne, this Court issued two opinions, Dixon III and Dixon IV, addressing sanctions against respondent.

In their motion for reconsideration, petitioners complain that during the course of the evidentiary hearing conducted on remand from the Court of Appeals, as required by DuFresne, this Court denied them access to Government documents that showed the extent of respondent's continued misconduct in attempting to conceal the trial attorneys' misconduct. Our decisions entered in accordance with Dixon III and Dixon IV, however, were appealed. Izen, in his brief on appeal, argued to the Court of Appeals that the Tax Court abused its discretion by denying petitioners' discovery requests related to respondent's conduct following the trial.[11] Although the Court of Appeals did not address Izen's discovery arguments in its Dixon V opinion, it referred to the "persistence and concealment of the misconduct", Dixon v. Commissioner, 316 F.3d at 1043, and commented that respondent's disclosure of the misconduct "was anything but complete". Id. at 1047 n.8. In formulating the Thompson settlement sanction mandated by Dixon V, the Dixon V panel was aware and took into account that respondent's conduct following the trial of the test cases had been less than exemplary.

The alleged misconduct of respondent's managers following the trial of the test cases was directly in issue in the prior

---

[11]In the Court's evidentiary proceedings on the Dixon V mandate, the Court required the production of the bulk of the materials to which petitioners had been previously denied access, as a means of helping the Court to ascertain "respondent's understanding of the origins and nature of the Thompson settlement." See supra notes 4 and 9 and accompanying text.

proceedings before the Court of Appeals and before this Court. We therefore hold that the issue in the cases at hand was covered by necessary implication by the opinion of the Court of Appeals in Dixon V and by its most recent primary mandate. Consequently, the Dixon V mandate bars this Court from considering petitioners' requests in the cases at hand to conduct a further inquiry into respondent's alleged continued misconduct and to impose sanctions against respondent for misconduct alleged to have occurred following the trial, opinion, and original decisions in the test cases.

Petitioners do not argue in their motion for reconsideration that further inquiry into respondent's alleged continued misconduct would be necessary or helpful in obtaining a better or more accurate sense of the terms and application of the Thompson settlement. Nor do we believe such an inquiry would have any such effect. In these circumstances, to engage in a further inquiry in the cases at hand (which encompass all pending cases in the Kersting project in which final decisions have not been entered) with a view to imposing additional sanctions on respondent would be inconsistent with and beyond the scope of the mandate of the Court of Appeals in Dixon V. The decision by the Court of Appeals in Dixon V not to address Izen's complaints about this Court's restraints on his discovery efforts--which

have been largely mooted by the Court's discovery rulings in the most recent evidentiary hearings--buttresses this conclusion.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.